The final case is set for argument today is Board of Trustees versus Neshoma Orchestra. Good morning, your honors. May it please the court, my name is Ivor Sturm. And I will be arguing this matter on behalf of the appellant Neshoma Orchestras. The first portion of my argument will address the issue of preemption of the union's unconditional promise and guarantee and contract that the assessment of the withdrawal liability would go away if Neshoma signed a new agreement. Secondly, I will address the constitutionality and legality of the fund's mandatory arbitration policy dictating payment of extortionate fees in order to object to the withdrawal liability findings. In this argument, I will also address the sufficiency of Neshoma's initial demand for arbitration under ERISA. The union unconditionally guaranteed to make the withdrawal liability assessment by the fund go away if Neshoma agreed to a new contract. The lower court found that this issue was preempted by the NLRA. The lower court found that this was in the context of bad faith bargaining. In our brief, the court was cited to the case of Retail Clerks v. Lion Dry Goods, 369 U.S. 17. The court held that settlement agreements between parties to a labor dispute should be enforced under Section 301. This court, in Winston v. Mediafare Entertainment, 777 Federal 2nd, 78, 1985, took the further step citing Retail Clerks holding that oral agreement of settlements should likely be enforced. While Winston did not involve a labor dispute, the lower courts in this circuit have cited to this policy affirmatively in the context of oral agreements between employers and unions. For example, the court has cited to New York Brake v. General Signal, a Northern District case, 873 FedSup 747, 1994. In preparing for this argument, I came across the Third Circuit case of Mack Trucks v. International Union, 856 Federal 2nd, 579, a 1988 case. Although not cited in our brief, this court — the court held that Section 301 gives the courts concurrent jurisdiction with the NLRB to determine the existence of a contract between an employer and a union. Neshama has argued that the guarantee by the union was a separate contract from the collective bargaining agreement. This court accepted the concurrent jurisdiction argument that 301 and the NLRA have concurrent jurisdiction over finding the existence of contracts in the case of Kosera v. Westchester Fairfield Contractors Association, 909 Federal 2nd, 48. Going back to Mack Truck, the court found that contract formation was within the purview of the jurisdiction of both the NLRB and the courts. Could you just step back and talk to the general course of events here and the nature of the claims? You have a breach of contract claim, a breach of — or negligent misrepresentation claim, a breach of implied promise of indemnification, and they're all based on that one interaction. Sign the agreement and will — the withdrawal liability will go away. It seemed to me that they were different approaches. Is that fair? Correct, Your Honor. Yeah. There's different theories for the existence of a contract, one on the federal level and a couple on the state level. And the district court basically found that those — that that was the — bore on the nature of the relationship between the orchestra and the union, as I understood it, and really sounded more under the NLRA in terms of a failure to bargain in good faith and pursue that. And that seemed to me very sensible, and I don't understand — In the Mack truck case. — what you're saying. Yes? The Mack truck case will address that issue. In Mack's case, the Court noted, quote, we do not find that Mack's unit — suit turns solely on violations of good-faith bargaining or the duty to execute agreement, which would trigger the NLRB's exclusive jurisdiction. Mack's complaint does not request that the union be ordered to execute agreement, nor did Mack's — nor did Mack claim that the UAW negotiated in bad faith or failed to bargain. Rather, Mack seeks to enforce the validity of a contract. But there is a strain of bad faith that runs throughout your tort claims, your state tort claims. And I think that's what the district court — that might distinguish this from Mack and why we are dealing with a preemption issue that's kind of persuasive. The NLRB would order them not to enforce the bad-faith negotiated contract. The board would order them to cease and desist from bargaining in bad faith. I accept that they bargained in bad faith. That's a given. Having bargained in bad faith, they still entered into a contract which is subject to 301. Well, since your time is short, maybe you could address the initiation of arbitration question. Sure. In the initiation of the arbitration issue, the court and the funds completely ignore the — Ms. Schumer's initial letter to the — to the trustee advising that we — if the withdrawal liability doesn't go away pursuant to this argument, please, we are demanding arbitration. But that is not initiation of arbitration. I mean, many courts have held that to initiate arbitration in a cognizable way, you need to file whatever forms are needed with the American Arbitration Association, pay a filing fee. That's the initiation. Same as initiation of a lawsuit is you file a complaint. It's not just a threat or a demand to, you know, tell us what to do. You have to actually act on it. And there were rules in place, right? I think your Honor is referring to the Seventh Circuit case in Robbins. But in that case, the court and the subsequent courts that have ruled that way have failed to distinguish between the contractual grievance — excuse me, delinquency arbitrations where the funds are saying you didn't pay this month's contribution and the post-expiration of a contract where they're seeking withdrawal liability, which is totally statutory. There is no contractual relationship to an ERISA demand for arbitration. And the rules and regulations for ERISA — I'm sorry, there's no — you're saying there's no relationship, but the withdrawal liability accrued under ERISA and agreements related to ERISA. Isn't that right? But the cases cited in my briefs establish that the ERISA right doesn't accrue — doesn't accrue until after the contract expires, when there's no longer a contract If there's no longer a contract, you can't bind me to the contractual grievance procedure of the collective bargaining agreement or the funds' internal grievance procedures. We're not bound by those rules anymore. Once — But there's plenty of law also saying that if an arbitration agreement is entered into by parties, that that is — may be enforced even after the formal expiration of the agreement. It's a typical clause that survives the — the expiration or termination. Why does that apply here? The — the Sherman never entered into an arbitration agreement with the funds. They entered into an arbitration agreement with the union, not the fund. All right. Well, we'll hear from your opponents. Thank you. And you have three minutes of rebuttal. Who's going first here? Okay. Your Honors, I'll go first. Harvey Mars for Local 802. May it please the Court. I wanted to address the issues that Mr. Sturm has brought before the Court. One issue is Mr. Sturm cites a case that's not in his brief. I wasn't notified that he'd be relying on a Third Circuit case, and therefore, I'm a bit surprised. I think it would have been incumbent on him if he discovered an additional case while he was researching, preparing for him to advise his adversary that he's relying on it. Being that's the case, I think this matter is entirely disposed of by Garmin. As Your Honor has pointed out, the facts and circumstances emanate from a negotiation for collective bargaining agreement. And we'll take the facts as Mr. Sturm presents them as true, as we must. Certainly, I have a different vantage point about what happened during that negotiation, but I don't think it has to go any further than the discussion that we're having here today. Statements made during the course of the negotiation to entice a party to enter into a collective bargaining agreement that may or may not be true constitute bad-faith bargaining. And that's what Judge Codall found, that the crutch of what had happened here was statements made that if you enter into this collective bargaining agreement, we will take steps to eradicate the withdrawal liability that's been imposed against Neshoma. One thing I wanted to point out, Your Honor, is that Local 802 had absolutely no involvement in the creation of the circumstances that led to the withdrawal liability. We are blameless. Neshoma decided to stop paying under the collective bargaining agreement that was existent. And because they stopped paying, the fund, which currently is in critical and declining status, imposed withdrawal liability. But even before they did that, they gave Neshoma every opportunity to pay quarterly payments, to make it right, and to add insult to injury. Neshoma did not properly initiate arbitration where they could have raised all of these issues. The second thing is Mr. Sturm raised the defense that there was some labor dispute and, therefore, withdrawal liability shouldn't be imposed. Quite frankly, that claim was decided by the fund not to be one germane to the circumstances. There was no strike. There was no circumstances that would give rise to labor dispute. And, therefore, the fund found that there was withdrawal liability, totally blameless from the vantage point of Local 802. Can we for a minute, though, on the chronology? So the CBA expired? Correct, Your Honor. And then was reinstated in connection or a new one entered into in connection with this conversation? The collective bargaining agreement expired, and then we were in the process of negotiating for a new collective bargaining agreement. And to say it was hard bargaining would be an overstatement. It's very difficult. And I assume this particular facet of the club date field is dying out. We call it the Jewish club date field. It's non-secular. And so we were at the last session, and we were about ready to ink the contract. And one of the principals of Neshoma says, oh, and the withdrawal liability is going to go away. And statements were made regarding withdrawal liability. I don't know if it's necessary to get into that, because they were my statements, and I think it was something to the effect that the union will support your efforts. Once you sign the contract, you're now reinstating your obligation to pay pension contributions, and therefore — And these facts are in the record, how? Yes, they are. I sent an e-mail to the fund the very day that contract was signed. We're asking whether in the court record these facts can be found. Yes, they can be. That's the DL off the record. No, I am not. There was an e-mail that was sent, and it's part of the record. Basically saying, we've entered into a collective bargaining agreement. We would like the fund now to expunge the withdrawal liability. That was the extent of the promise. But the fact of the matter, getting into whether there was a viable contract under Section 301, it's — it's well decided in this circuit that the contract has to emanate out of obligations established in a collective This is one case that I cited in my brief, R.E. Deet Company, 996 Fed 2nd, 592. I don't have the year for that, but this Court said that a letter agreement that was sent by an employer to the employees, his employees, making certain assertions and promises, was not enforceable under Section 301. This agreement is even less so, because it's not an agreement pertaining to the bargaining unit. It was a statement made during the course of collective bargaining at the very end regarding the consequence of withdrawal liability. And the way I look at it, Neshoma, in order to try to get out of this obligation that was their own doing, is now trying to pawn it off on Local 802 so that they can, in a sense, be held blameless for their own conduct. And that should be permitted. Thank you, Your Honor. Kagan. Thank you very much. We'll hear from the Fund. Ms. McConnell. McConnell. Good afternoon. The Court has properly stated the law with regard to initiation of arbitration under ERISA where, consistent with the regulations promulgated by PBGC, the plan has adopted rules which, in this case, as you'd said, require arbitration under the AAA, and which ---- Kennedy. The notice has to be made to the AAA in order to convince them. McConnell. Notice and filing of the fee. Kennedy. And payment of the fee. Kennedy. Payment of the fee. McConnell. Right. Kennedy. He's making some claim here that the fee was exorbitant, but they didn't do anything during the period. No. No. I mean, it just ---- it came too late in the day. I mean, it's ---- You could pay a limited fee, get ---- file your notice, and then argue about the fee with the arbitrator. That's absolutely correct. I don't know if you have any other questions for me. That's enough. Thank you. Mr. Mars, you have three minutes or Mr. Stern, you have three minutes of rebuttal. Mr. Mars made certain factual assertions here that are not necessarily relevant because at this stage, the complaint was dismissed without a trial, so the allegations of the complaint must be accepted as true. The allegations of the complaint have not just one incident where the fund was withdrawn. In 2013, the union caused the fund to assess withdrawal liability of Neshama. We fought it out. We won. They caused the fund to withdraw the demand for withdrawal liability on the grounds that there was a labor dispute. A labor dispute does not have to have a strike. It just means that there's negotiating a new contract. But put that aside. A labor dispute just means you're negotiating a new contract? Yes, Your Honor. I think of negotiations as not necessarily signaling a dispute. Why is that? I believe that if you research the cases, all you need is the existence of a dispute, meaning I don't agree to your proposals, you don't agree to my proposals. That's a labor dispute. A labor dispute does not mean a strike. Far from it. With regard to the sufficiency of the demand for arbitration, I would like to point the Court's attention to the various provisions of the Code of Federal Regulations, which minimize the obligations in terms of what it takes to get a case started in arbitration. One, all you have to say is, I ask for arbitration. Could you speak? Do we don't have any? Do you have Second Circuit authority that says that? I have the Code of Federal Regulations say it. And none of the courts cite to this. I'm sorry. These are PBGC regulations? Correct. And do they appear in your brief? Yes. I'm not sure. 29 CFR 4221.3 is the one. I'm not going to go and look right now. I'm concerned. If it's not in your brief, I don't think we should really pay much attention to what you're arguing. If it's not in your brief. If it's in your brief, that's fine. No, no. It's in my brief. Okay. I'm sure it's out of the question. You don't have to do it in so many words to demand arbitration, but you can say I want arbitration. And that's all it takes, Your Honor. You can walk out on the street and just say it? No. You have to make it to the fund. The American Arbitration Association. No. That's not what the statute says. That's not what the statute says. You can just go out on the street and say it. No. You have to make it. When you make a demand for arbitration, let's go back to arbitration law and the general context of labor relations or arbitration law. What about the rules of the AAA? We're not bound by the rules of the AAA. You're not. Why would we be bound? We're not contract to that. And the proof of the matter is if you look at the statute and the rules, the rules say that any provision that doesn't provide for equal payment to the arbitrator's fee is per se unlawful unless it was entered into voluntarily by the parties after the demand for the assessment of the withdrawal liability came out. Thank you very much. We're — We have your papers. We'll review your briefs. Thank you. We'll reserve decision. We have one case on submission, Morabito v. State of New York. And the clerk will please adjourn. MS. MORABITO V. STATE OF NEW YORK